UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 12-20620 |
| Plaintiff, | Stephanie Dawkins Davis |
| v. | United States District Judge |
| PATRICIA FLEMING, | |
| Defendant. | |

_____ /

**ORDER ON MOTION FOR
COMPASSIONATE RELEASE (ECF Nos. 33, 41)**

A.   Procedural History

Defendant, Patricia Fleming, originally filed a motion for compassionate release pro se, alleging that he[1] is in particular danger from COVID 19 at the Livingston County Jail based on his health conditions of anemia and sickle cell trait.  (ECF No. 33).  Fleming filed a supplemental motion on May 3, 2020 and the matter was reassigned to the undersigned on May 29, 2020.  (ECF No. 41).  The Court appointed the FDO as counsel and ordered the government to respond.  (ECF Nos. 34, 35).  The government responded on June 18, 2020, raising only the

---

[1] As explained by the defense, BOP records indicate Fleming identifies as a man and though Fleming is serving time in a female custodial facility, Fleming gender-identifies as male.  Therefore, the court follows suit in using masculine pronouns in conformity with Fleming's self-identification.  (ECF. Nos. 39 Fn.1 and 44, Fn.1)

1

issue of failure to exhaust in opposition to the motion. (ECF No. 38). FDO filed a reply, asserting that (1) Fleming is not in the custody of the BOP and thus, cannot exhaust; (2) Fleming's conditions of high blood pressure and sickle cell trait put him at high risk for COVID 19 complications, which warrants release; and (3) the government failed to address the merits of defendant's motion, thus rendering objection on the merits waived. (ECF No. 39). The court held a hearing on July 2, 2020 and allowed the parties to submit supplemental briefs on the exhaustion issue, which both sides have now submitted. (ECF Nos. 40, 42, 43).

B.  Factual Background

Patricia Fleming is a federal prisoner nearing the end of a sentence for a 2014 conviction for possession of a stolen firearm in violation of 18 U.S.C. §§ 922(j) and 924(a)(2). The conviction stemmed from an August 23, 2012 incident in which Fleming, who had previously been convicted of a felony-controlled substance offense, took a stolen H&R .32 caliber revolver to Club Innuendo in the city of Detroit. A shot was fired at the Club and police responded to the scene, where a witness identified Fleming as the individual who fired the shot. (ECF No. 24).

Though Fleming qualified as an Armed Career Criminal pursuant to 18 U.S.C. § 924(e), a charge that would have resulted in a guideline range of 180-188 months imprisonment, he successfully negotiated a plea to the reduced charge of

possessing a stolen firearm which limited his imprisonment exposure to 10 years – the statutory maximum for that offense. (ECF No. 25). As a result, 120 months became his guideline range at sentencing. The court sentenced Fleming to 101 months (roughly eight and a half years) imprisonment to be followed by three years of supervised release. During the pendency of his case, Fleming, who has a long history of mental health problems, underwent a comprehensive mental health assessment and was diagnosed with Schizoaffective Disorder, with auditory hallucinations and Post-traumatic Stress Disorder. As a result, the court made an additional recommendation for Fleming to be designated to a mental health facility for a mental health evaluation and treatment before further placement. (ECF No. 27).

As Fleming neared the end of his sentence, he was transferred from a BOP prison to Heartline Halfway house, a Residential Re-entry Center (RRC) where inmates typically begin to make the transition to non-custodial status. Fleming arrived at Heartline in June 2019 but absconded from the facility three short months later in September 2019. At the time that he walked away from Heartline, Fleming had begun to use drugs which the defense suggests was an attempt to self-medicate for his untreated mental health issues. United States Marshals found him six months later in March 2020, working at X-Cel Industries in Southfield, Michigan and arrested him there without incident. The marshals transported him

to the Livingston County Jail, where he is currently housed. Since arriving at the jail, Fleming has not made a request to anyone there, at Heartline or anyone otherwise associated with the Bureau of Prisons for compassionate release. Instead, he filed the instant motion with this court – a move the government argues was improper due to Fleming's failure to exhaust his administrative remedies.

C. <u>Exhaustion</u>

Citing *United States v. Alam*, --- F.3d ----, 2020 WL 2845694, at *2-3 (6th Cir. 2020), the government argues that Fleming's motion should be dismissed because he did not exhaust his administrative remedies as mandated by 18 U.S.C. § 3582(c)(1)(A). As the Sixth Circuit explained in *Alam*, exhaustion of administrative remedies is "a mandatory condition" that "must be enforced" when the government raises it. *Id*. at *3. Where not met, it is a "'glaring roadblock foreclosing compassionate release.'" *Id*. at *4 (quoting *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)). And the Covid-19 pandemic does not change this. *Id*. at *4-5. As noted, BOP has no record of any request from Fleming for compassionate release. Consequently, the government asserts that he has failed to exhaust and is therefore foreclosed from seeking relief in this court at this juncture.

Fleming maintains, however, that because he is housed in the Livingston County Jail, and is not in the custody of the BOP, there are no administrative remedies for him to exhaust. *United States v. Jepsen*, 2020 WL 1640232, at *3 (D.

4

Conn. April 1, 2020) (no administrative remedies available when defendant designated to a non-BOP facility); *United States v. Gonzalez*, 2020 WL 1536155, at *1 (E.D. Wash. March 31, 2020) (no exhaustion requirement where the BOP stated that no one could process the administrative request of defendant in a county jail awaiting designation). Notably, the government took the same position as Fleming in at least on other case in this District, *United States v. Gaston*, 2020 WL 3287977, *1, n.1 (E.D. Mich. Jun. 18, 2020) (Levy, J.). In *Gaston*, the defendant and the government agreed that the defendant exhausted her administrative remedies because, as a pre-designated detainee "in the custody of the United States Marshal, in a local detention center, i.e., Livingston County Jail ... Gaston is not in BOP's custody [and] the BOP cannot evaluate her for compassionate release.... Thus, Gaston has, in effect, exhausted her remedies with the BOP." *Id.* Similarly, Fleming argues that he is not in the custody of the BOP and cannot exhaust his administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A). The government distinguishes the *Gaston* case based on the defendant's status as a pre-designated detainee there versus Fleming's status as a prisoner moved to an RRC to serve out his sentence.

    Despite the government's explanation of Fleming's status, the picture remains somewhat murky. Fleming was housed in the Livingston County Jail when he filed his motion and remains there as far as the court is aware, having

5

appeared at that location during the court's remote electronic proceedings. Upon his appointment, defense counsel inquired of the United States Marshals Service (USMS) on June 10, 2020 as to whether Fleming was in the custody of the BOP or USMS. While USMS did not definitively respond, counsel noted that after his inquiry, Fleming's status changed on the BOP website from "escape" status to in the custody of Detroit Residential Reentry Manager (RRM). Regardless, Fleming posits that even if he is deemed to be in the custody of the RRM, there is no administrative remedy available to him. In its sur-reply, the government avers that upon contacting BOP, one of its representatives confirmed in an email that the RRM is the "warden" for inmates under RRM supervision. Accordingly, the government argues that Fleming is under the purview of the RRM and could have submitted his request for compassionate release to the manager, which he has not done.

In its supplemental response, the government further explains that, according to the BOP, Fleming remained in BOP custody throughout the time he was housed at Livingston County Jail. (ECF No. 43-1). More specifically, according the BOP, Fleming (1) has been designated to the BOP's Detroit Residential Reentry Office (shown as "CDT" on SENTRY—the BOP's primary mission support database) since June 11, 2019, for continued service of his federal sentence. (ECF No. 43-1: July 9, 2020 Correspondence); (2) The RRM serves as the "Warden" for those

designated to CDT. *Id*.; (3) Fleming's projected release date from his federal sentence is April 11, 2022. *Id*.; (4) From September 8, 2019, to March 16, 2020, Fleming was on escape status. *Id*.; (5) At any time during his designation to CDT, Fleming could have requested a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) by submitting his request to the RRM. *Id*.; and (6) He has not submitted any such request to the RRM. *Id*.

Fleming points out, however, that even if it is true that he was in the custody of the BOP while at Livingston County Jail, the BOP failed to give notice of the administrative process for seeking a reduction in sentence as required by the governing statute. Because of this lack of notice, Fleming argues that the government is precluded from raising failure to exhaust as an affirmative defense. Fleming points out that he was in the Livingston County Jail for over 30 days with no contact from the BOP and his status on the BOP website was simply listed as "escape." Fleming also notes that the government has offered no evidence that anyone other than the BOP was aware that the RRM could serve as the warden for purposes of exhaustion of a compassionate release request. Fleming maintains that no one from RRM contacted him until well after he filed his motion for release and counsel was appointed. Fleming also points out that the government cites no BOP regulations validating its claim that the RRM serves as a substitute for the warden.

7

As noted by Fleming, 18 U.S.C. § 3852 requires the BOP to post notices regarding the process required to pursue compassionate release:

> (d) Notification requirements.--
> * * *
> (2) Notification.--The Bureau of Prisons shall, subject to any applicable confidentiality requirements—
> * * *
>> (C) ensure that all Bureau of Prisons facilities regularly and visibly post, including in prisoner handbooks, staff training materials, and facility law libraries and medical and hospice facilities, and make available to prisoners upon demand, notice of—
>>
>>> (i) a defendant's ability to request a sentence reduction pursuant to subsection (c)(1)(A);
>>>
>>> (ii) the procedures and timelines for initiating and resolving requests described in clause (i); and
>>>
>>> (iii) the right to appeal a denial of a request described in clause (i) after all administrative rights to appeal within the Bureau of Prisons have been exhausted.

18 U.S.C. § 3582(d)(2)(C)(i-iii); *see also United States v. Burnside*, 2020 WL 3443944 (N.D. Iowa June 18, 2020) (Title 18 U.S.C. § 3582(d)(2)(C)(iii) requires that the BOP post notice in all available prison handbooks and libraries of the right to appeal a denial of a request for compassionate release by the warden after all administrative rights to appeal within the BOP have been exhausted.); *United States v. McConico*, 2020 WL 4431424, *1 (E.D. Mich. July 31, 2020) (Court

rejects government's argument that defendant failed to appeal the denial of compassionate release request because the denial did not put him on notice of any administrative right to appeal. Accordingly, those rights were not available to the defendant).

Here, the government offers no evidence suggesting that it provided notice of the procedure it now says was required to exhaust Fleming's administrative remedies while housed at Livingston County Jail and in RRM custody. The statute is unambiguous regarding BOP's obligation to provide to provide such notice.[2] And the government makes no argument that notice was somehow excused in this instance. Thus, in the absence of such notice, Fleming's argument that any such procedure was not available for purposes of exhaustion is well taken. Such a finding is consistent with case law dealing with a similar exhaustion requirement in the prisoner civil rights context. The court finds such cases analogous and helpful here. As explained in *Griffin v. Malatinsky*, 2018 WL 3198547, at *2 (E.D. Mich. June 29, 2018), an inmate is only permitted to bring a § 1983 claim without exhausting his administrative remedies where such remedies are not available. *Id.* (citing *Ross v. Blake*, 136 S.Ct. 1850, 1858 (2016)). Under *Ross*, administrative

---

[2] The statute does not define what qualifies as a BOP facility and the parties do not address the issue directly. Both Fleming's and the government's arguments however raise the inference that Fleming's custodial location was considered a BOP facility for purposes of the statute inasmuch as they center a good deal of their argument on the issue of who qualifies as the "warden" for purposes of satisfying the statute. Therefore, for purposes of this analysis, the court does also.

remedies are only considered unavailable (i) where the administrative procedure "operates as a simple dead end—with officers unable or unwilling to provide any relief to aggrieved inmates"; (ii) where the administrative remedy scheme is "essentially unknowable" and thus "no ordinary prisoner can discern or navigate it"; or (iii) "when prisoner administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *See id*. at 1858-1861. Here, where BOP provided no notice of the procedure to those in RRM custody, the procedure is essentially unknowable.

Even before *Ross*, several courts noted lack of notice as an obstacle and found that failure to exhaust could not be held against an inmate in such circumstances. For example, in *Goebert v. Lee County*, 510 F.3d 1312 (11th Cir. 2007), the Eleventh Circuit excused the plaintiff's failure to exhaust where he was never advised of the grievance system, reasoning, "That which is unknown and unknowable is unavailable." *Id*. at 1323. Other courts reached similar conclusions. *See e.g.*, *Romanelli v. Suliene*, 2008 WL 4587110, at *6 (W.D. Wisc. Jan. 10, 2008) (placing onus on officials to inform prisoners of grievance procedures: "if officials want to ... obtain dismissal of lawsuits filed without using the administrative remedy process, they must at least tell the prisoner what the process is"); *Russell v. Unknown Cook Cty. Sheriff's Officers*, 2004 WL 2997503, at *4-5 (N.D. Ill. Dec. 27, 2004) (defendants required to establish that they gave

10

actual notice (e.g., that an inmate handbook was distributed to plaintiff) where plaintiff alleged ignorance of administrative process); *Arnold v. Goetz*, 245 F.Supp.2d 527, 537-38 (S.D.N.Y.2003) (noting that an inmate who is not informed about the grievance procedures cannot avail himself of them); *Hall v. Sheahan*, 2001 WL 111019, at *2 (N.D. Ill. Feb. 2, 2001) ("An institution cannot keep inmates in ignorance of the grievance procedure and then fault them for not using it."). It follows that the BOP may not neglect to provide notice of the manner in which a person can administratively exhaust a compassionate release claim when in RRM custody, then seek to hold such a person to that unknown procedure. And as to the government's reliance on *Alam,* the court notes that there was no issue as to notice of the exhaustion procedure in that case. Indeed, the *Alam* court rejected certain equitable challenges to the exhaustion requirement. Yet, Fleming's challenge on notice is based on the BOP's failure to satisfy the statute. Accordingly, the court concludes that *Alam's* analysis does not apply here and the government has not proven its affirmative defense of failure to exhaust. Thus, Fleming's motion is not barred due to any failure to exhaust.

    C.    <u>Compassionate Release is Not Warranted</u>

Fleming argues that release is justified under 18 U.S.C. § 3582(c)(1)(A). First, he asserts that his documented history of anemia and high blood pressure puts him at greater risk for serious complications from COVID-19 and he is housed

11

in an institution that has been exposed to the virus. Fleming cites a number of cases, including some in this district, granting compassionate release to movants with hypertension and anemia. *Malam v. Adducci*, --- F.Supp.3d ----, 2020 WL 1899570 (E.D. Mich. Apr. 17, 2020) (Immigration detainee with hypertension, anemia, and bipolar disorder must be released from the Calhoun County Correctional Center (jail) due to the risk associated with Covid-19, relying on the declarations of two epidemiologists.); *United States v. Sanders*, Case No. 19-cr-20288, ECF No. 35, PageID.202-03 (E.D. Mich. Apr. 17, 2020) (citing *United States of America v. Patino*, 2020 WL 1676766, at *2 (E.D. Mich. Apr. 6, 2020) ("Mr. Patino is at high risk due to stage 3 chronic kidney disease and hypertension, and his age (63 years old)."); *United States v. Doshi*, 2020 WL 1527186, at *1 (E.D. Mich. Mar. 31, 2020) (recommending that prisoner with hypertension and diabetes be placed in home confinement); *Perez-Perez v. Adduci*, 2020 WL 2305276, at *5-6 (E.D. Mich. May 9, 2020) (noting that a prisoner who suffered from hypertension faced a heightened risk of severe medical consequences or death if the prisoner contracted COVID-19); *States v. White*, Case No. 13-20653, ECF No. 54 (E.D. Mich. May 20, 2020) (granting compassionate release to inmate at FCI Milan with obesity and hypertension); *United States v. Bray*, Case No. 19-20216, ECF No. 164, PageID.627-28 (E.D. Mich. May 14, 2020) ("[N]ew studies identify an increased risk of death from the virus for individuals with

hypertension."); *United States v. Goins*, 2020 WL 3064452, at *5 (E.D. Mich. June 9, 2020) (explaining that movant's "ongoing non-pulmonary hypertension – and the fact that his blood pressure remains high despite his use of medications – puts him at elevated risk of severe complications from COVID-19"); *United States v. White*, 2020 WL 2557077, at *5 (E.D. Mich. May 20, 2020) (citing *Perez-Perez v. Adduci*, No. 20-10833, 2020 WL 2305276, at *5-6 (E.D. Mich. May 9, 2020) (noting that a prisoner who suffered from hypertension faced a heightened risk of severe medical consequences and/or death if the prisoner contracted COVID-19)).

Additionally, courts have found that individuals with the sickle cell trait may experience complications from COVID-19. *United States v. Thompson*, 2020 WL 3470300, at *3 (C.D. Ill. June 25, 2020) (Based on the CDC information regarding sickle cell disease and COVID-19, court concluded that a person with the sickle cell trait may experience serious complications if diagnosed with COVID-19); *United States v. Harden*, 2020 WL 3056140, at *3 (D. Colo. June 8, 2020) (Asthma and sickle cell trait made movant particularly susceptible to COVID-19 and may constitute extraordinary and compelling reasons to justify compassionate release). Accordingly, the court accepts the proposition that hypertension, anemia and sickle cell trait are conditions that may justify compassionate release under certain circumstances.

13

The government cites a number of cases from this District in which courts concluded that Livingston County Jail has taken sufficient precautions to ameliorate the risk of exposure and thus, release was not necessary. But notably, none of the government's cases involved inmates or detainees with medical conditions that put them at greater risk for serious complications from COVID-19. *United States v. Frost*, 2020 WL 1899561, at *5 (E.D. Mich. Apr. 17, 2020) ("[T]he Court takes issue with Defendant's lack of information as to how the detention facility is being indifferent towards him or what his specific, current medical needs are" and the generalities from the CDC guidance on correctional facilities is not sufficient to warrant release.); *United States v. Stevenson*, 2020 WL 1975229, at *4 (E.D. Mich. Apr. 24, 2020) ("Defendant does not claim he is of advanced age, feeble, or that he has any pre-existing medical conditions, let alone serious ones, that make him unusually prone to viral injury."); *United States v. Wood*, 2020 WL 2131825, at *4 (E.D. Mich. May 5, 2020) ("Wood does not tell the Court exactly how he is at a higher risk for infection. He mentions that he is 50 years old, and that he is a chronic smoker with respiratory issues. He provides no medical records. This alone does not place him in a high-risk category according to the Center for Disease Control."); *USA v. Watkins*, Case No. 19-20768, ECF No. 39 (Court rejected pre-trial release based on generalized concerns about COVID-19 at the Livingston County Jail); *USA v. Duplessis*, Case No. 20-mj-30159, ECF

No. 17 (Court rejected request for pre-trial release based on generalized concerns about COVID-19, where defendant failed to cite any medical conditions that would place him at heightened risk for contracting COVID-19 or from suffering severe complications.).

Lastly, the government argues that the court should deny Flemings' motion based on the sentencing factors set forth in 18 U.S.C. § 3553(a). Title 18 U.S.C. § 3553(a) provides that "[a] court, in determining the particular sentence to be imposed, shall consider[:]"

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established...

> (5) any pertinent policy statement...
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

"[D]istrict courts have 'broad discretion to determine what sentence will serve § 3553(a)'s statutory objectives.'" *United States v. Kincaid*, 805 Fed. Appx. 394, 394 (6th Cir. 2020) (quoting *United States v. Kontrol*, 554 F.3d 1089, 1093 (6th Cir. 2009)) (affirming a district court's denial of compassionate release after consideration of § 3553(a)'s factors).

The government argues that Fleming's criminal history rendered him eligible to be charged as an Armed Career Criminal in relation to his offense conduct, and the circumstances surrounding his conviction are "violent and alarming." The government also points out that Fleming violated his RRC conditions with new offenses and then escaped from the RRC, evading capture by using an alias and obtaining a fraudulent driver's license. Accordingly, the government maintains that he is a danger to himself and others and is unwilling to comply with even direct supervision.

The government's points are well-taken. Fleming's criminal history and the circumstances surrounding his offense of conviction are serious and troubling – all

the more so because he was under a term of parole at the time of his crime. His criminal conduct involved shooting a stolen weapon inside a populated, enclosed nightclub and wrestling with the security guard inside the nightclub when the guard attempted to retrieve the weapon. Notwithstanding these facts and in view of his history and characteristics, which include but are not limited to (1) having endured extremely challenging circumstances growing up as set forth in the original sentencing briefing; (2) appreciable mental health challenges; and (3) substance abuse, along with the other sentencing factors, the sentencing court gave him a sentence appreciably below (19 months below) the agreed upon range of the parties. Yet, nearing the end of his term and before the documented introduction of the Corona Virus to this country, he took flight. Indeed, his behavior upon transferring to the RRM does not confer a high degree of confidence that Fleming has developed much respect for the law. Not only did he resume drug use and abscond from custody for six months, as the government points out, while an escapee from federal custody he took steps to conceal his identity by using an alias and obtaining a false driver's license. Ignoring these troubling actions would not promote respect for the law or deter future illegal conduct.

Moreover, under 18 U.S.C. §3582(c)(1)(A)(i), the court must find that the overall circumstances presented provide "extraordinary and compelling reasons" warranting a sentence reduction. Such is not the case here. As the government

points out, the Livingston County Jail appears to have developed a relatively effective protocol for avoiding the spread of the virus in its facility. The facility had only two cases of the virus at the time of the hearing on this matter, and those two individuals were segregated from others in the facility. Thus, while Fleming's health conditions do raise a concern should he be exposed, the jail's conscientious efforts and relative success to date in ameliorating the risk also weigh against release in this instance.

      Therefore, for the reasons set forth above, Fleming's motion is **DENIED**.

Date: September 2, 2020                      <u>s/Stephanie Dawkins Davis</u>
                                                      Stephanie Dawkins Davis
                                                      United States District Judge